UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-cr-352 (CKK) |
| v. : | |
| : | |
| SHAWN EVERETT SCHAEFER, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Shawn Schaefer has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) and a violation of 40 U.S.C. § 5104(e)(2)(G). For the reasons set forth herein, the government requests that this Court sentence Schaefer to fourteen days of incarceration on Count One and 24 months of probation on Count Two. The government also requests that this Court impose 60 hours of community service, $500 in restitution, a $20 special assessment, and a fine.

I. **Introduction**

Defendant Shawn Schaefer, a 50-year-old marketing director from Orange County, California, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and

1

Schaefer pled guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G). The government's recommendation is supported by Schaefer's (1) watching other rioters ransack the Senate Parliamentarian's office before he advanced further into the building and (2) post-arrest utterance about the treatment of "law abiding citizens" in the United States. The Court must also consider that Schaefer's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Schaefer's crime support a sentence of fourteen days of incarceration on Count One and 24 months of probation on Count Two.

II.     **Factual and Procedural Background**

*The January 6, 2021, Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 24.

*Schaefer's Role in the January 6, 2021, Attack on the Capitol*

On December 28, 2020, Schaefer and Kevin Galetto began planning to travel to Washington, D.C. to attend the "Stop the Steal" rally. [2] On January 3, 2021, Galetto and Schaefer exchanged messages regarding the purchase of walkie-talkies. Via text message, Galetto offered to buy a pair and told Schaefer that he "picked up walkie-talkies 16 mile range with several channels (24x120 sub channels) has lots of bells and whistles. Should be good to go." In addition

---

is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

[2] On September 5, 2023, this Court sentenced Galetto to 27 months incarceration in connection with his conduct at the Capitol. *See United States v. Kevin Galetto*, 21-cr-517 (CKK), Minute Entry, September 5, 2023.

to texting, Schaefer and Galetto met in person to plan their trip to D.C. On January 4, 2021, Galetto asked Schaefer, "You coming over tonight? Lots to discuss." Schaefer responded that he planned to and later texted, "I'm here … where park? [*sic*]" On January 5, 2021, Schaefer and Galetto flew to Baltimore, Maryland, from Los Angeles, California. They took an Uber to Washington, D.C. where they stayed at St. Gregory Hotel Dupont in Washington, D.C. on the nights of January 5 and 6, 2021.

On January 6, Schaefer attended the rally at the Ellipse and took several photographs of himself on the National Mall, including a selfie-style photograph in front of the Washington Monument. *See* Figure 1.



*Figure 1. Schaefer is marked with a red circle. Galetto's arm is identified by a green arrow.*

Sometime before 1:37 p.m., the Schaefer and Galetto became separated. They exchanged twelve phone calls and numerous text messages between 1:37 p.m. and 6:23 p.m. Schaefer, now alone, moved east from the National Mall in the direction of the Capitol. He approached the Capitol

from the west side, and so would have passed through the scene of a riot as he was making his approach to the Capitol and to the Upper West Terrace.

Shortly before 2:57 p.m., after ascending the exterior the building's exterior stairs through the riot, Schaefer reached the Upper West Terrace. Schaefer was dressed in in a black jacket, gray hooded sweatshirt, black gloves, blue jeans, red and black running shoes with white soles, a gray backpack with distinctive bright lining, a face mask bunched at the base of his chin. *See* Figure 2. He also carried a black handheld radio attached to the left shoulder strap of the backpack. *Id.*



*Figure 2. Schaefer on the Upper West Terrace, with a walkie-talkie attached to his backpack strap.*

At 2:57 p.m., Schaefer entered the Capitol via the Senate Parliamentarian Door. The area inside this door is known as the Brumidi Corridor. When he entered the Brumidi Corridor, Schaefer had pulled a blue Trump-branded face mask up from his below his chin to cover his face. As he entered the building, Schaefer was holding a cell phone over his head and used it to record the scene inside the Brumidi Corridor. *See* Figures 3 & 4. When Schaefer entered the Brumidi

4

Corridor, the hallway was full of chemical irritants that officers had been spraying moments before to try to prevent rioters from going further into the building.



*Figure 3.*



*Figure 4.*

At approximately 2:58 p.m., Schaefer, still using his phone to record the scene, entered the Parliamentarian's Office. *See* Figure 4. When he entered the Senate Parliamentarian's Office, other rioters were ransacking it by overturning furniture, tossing papers, and stealing items.

5



*Figure 5.*

Schaefer was inside the Parliamentarian's Office for about twenty seconds. He appeared to hold his phone above his head and take a picture before turning right outside of the office and starting to walk down the hallway as part of the mob pressing further into the building. Schaefer walked down the hallway for another approximately twenty seconds before he and other rioters were confronted by police and turned around. *See* Figure 6.



*Figure 6.*

The police moved the rioters towards the exit. At approximately 2:59 p.m., Schaefer exited the Capitol building through the same door he entered. He was inside of the Capitol for less than two minutes.

*Schaefer's Pre-Arrest Statement and Conduct*

On March 28, 2023, FBI agents conducted a non-custodial interview of Schaefer at his residence in Placentia, California. During this interview, Schaefer stated he traveled to Washington with Galetto to support then-President Trump and see him speak. He stated that he attended the former president's speech on January 6, 2021, then walked to the Capitol with the crowd. Schaefer minimized his conduct the FBI when stated that he entered the Capitol building, but after seeing a ransacked office he exited the building because he thought "people could get in trouble for this." In connection with this case, the FBI obtained a search warrant for Schaeffer's iCloud account. While searching that account, the FBI agents discovered that information about Schaefer's participation in the riot at the Capitol had been wiped from the account.

*Schaefer's Post-Arrest Utterance*

Schaefer was arrested on February 25, 2024. While he was being transported to the custody of the United States Marshals, Schaefer spontaneously announced in the presence of agents in the vehicle, "Terrible country we're becoming when law abiding citizens are treated this way in America."

*The Charges and Plea Agreement*

On August 2, 2024, the United States charged Schaefer by a two count Information with violating 40 U.S.C. 5104(e)(2)(D) and (e)(2)(G). On September 4, 2024, pursuant to a plea agreement, Schaefer pled guilty to both counts of the Information. By plea agreement, Schaefer agreed to pay $500 in restitution to the Architect of the Capitol.

*Schaefer's Post-Plea Debrief*

On January 3, 2025, pursuant to the terms of his plea agreement, Schaefer participated in a debrief with the government. During this debrief, Schaefer stated that he realized that the events

7

of January 6 were a "bigger deal" than he had originally thought when he saw news footage of the riot on the evening of January 6, 2021. He further stated that he became concerned about getting in trouble after Galetto was arrested in May 2021. Schaefer deleted videos and photos from his iCloud account about a year after the riot because he believed that they could "cause problems." Schaefer stated that he thought it would be best to delete the "most incriminating" videos. He did not recall deleting any content, such as emails or text messages, other than the videos he filmed inside the Capitol.

### III.     Statutory Penalties

Schaefer now faces sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Schaefer faces up to six months of imprisonment, up to three years' probation, and a fine of up to $5,000. Schaefer must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of fourteen days of incarceration on Count One and 24 months of probation on Count Two.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while

staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Schaefer's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Schaefer, the absence of violent or destructive acts is not a mitigating factor. Had Schaefer engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in this case is Schaefer's minimization of his conduct at the Capitol in during his March 2023 interview with the FBI and his post-arrest expression of disgust with the way that "law-abiding citizens" are being treated in the United States. Although he has now pled guilty, the Court should consider this habitual minimization in crafting its sentence. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  Schaefer's History and Characteristics

As set forth in the PSR, Schaefer is a college-educated marketing director who has lived in a stable home environment with his wife and two children for more than twenty years. Schaefer reported that his parents divorced when he was young, but that he lived a childhood largely free from trauma or want. He has never been convicted of a crime. Despite being a law-abiding citizen before January 6, Schaefer chose to participate in a violent riot that temporarily thwarted the peaceful transition of power. Since that time, he has made statements that indicate, at least until the time of his plea, a general refusal to acknowledge the full scope of the wrongfulness of his actions. This factor weighs in favor of a term of incarceration and a term of supervised release.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B and C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37). General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Schaefer joined a riot at the Capitol and, after breaching the building and entering an office as it was being ransacked, tried to proceed further into the building. These facts, taken together with his minimization of his conduct in his pre-arrest statement and post-arrest utterance, indicate that Schaefer needs specific deterrence in the form of a sentence to incarceration.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[3] This Court must sentence Schaefer based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Schaefer has pleaded guilty to Counts One and Two of the Information, which charged him with violations of 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

11

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Ruben Reyna*,2 23-cr-350 (CKK), the defendant travelled to Washington D.C. from Michigan and entered the Capitol through the Senate Wing Door. Like Schaefer, Johnson entered the building despite the obvious signs of a riot that were unfolding around him. Unlike Schaefer, Reyna entered the Capitol by climbing through a broken window. Reyna was in the Capitol for approximately one minute, which is about half the time that Schaefer was inside the building. Unlike Schaefer, he did not enter any offices inside the building. Like Schaefer, Reyna made statements to the FBI that demonstrated a lack of remorse, but Reyna's statements were less equivocal than Schaefer's. This Court sentenced Reyna to fourteen days incarceration and twelve months of probation following his guilty plea to violations of 18 U.S.C. § 1752(a)(1).

In *United States v. Thomas Uberto*, 22-cr-7 (TSC), the defendant entered the Capitol via the Senate Wing Door at 2:58 p.m., around the same time that Schaefer did and from the same courtyard where the scenes of a riot were unfolding around them. Unlike Schaefer, Uberto pushed through the crowd inside the Senate Wing Door. Uberto walked around the Capitol for approximately eight minutes, longer than Schaefer did. Like Schaefer, Uberto filmed his conduct inside the Capitol. Like Schaefer, Uberto made statements after January 6 that minimized his conduct and the conduct of the mob that day. Uberto pled guilty to one count of 50 U.S.C. § 5104(e)(2)(G) and Judge Chutkan sentenced him to ten days incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d

12

220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

### V. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Schaefer must pay $500 in restitution, which reflects in part the role Schaefer played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Schaefer's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities.

**VI.   Fine**

Schaefer's convictions under 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G) subject him to a statutory maximum fine of $5,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1). The burden is on Schaefer to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Here, Schaefer did not provide any financial statements or material to the Probation Office. See PSR ¶ 66-69. Therefore, he has not shown an inability to pay. *See* 18 U.S.C. § 3572(a). The Court should therefore order him to pay a fine for his convictions.

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Schaefer to fourteen days incarceration on Count One and twenty-four months of supervised release on Count Two. The government additionally requests that the Court require Schaefer to pay $2,000 in restitution, a $20 special assessment, and a fine.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    *s/ Sean P. McCauley*
SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D Street, NW
Washington, DC 20530
Sean.McCauley@usdoj.gov